| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| JOSE LANDI,<br><br>         Plaintiff,<br><br>– against –<br><br>341 HANCOCK LLC, 103 SAINT JAMES PLACE, LLC, RANDOLPH CRAIG, and TATIANA CAMES,<br><br>         Defendants. | **MEMORANDUM & ORDER**<br><br>16-cv-2655 (ERK) (PK) |

KORMAN, *J.*:

  This case arises out of a wage-and-hour dispute between Jose Landi and his alleged former employers. Landi, a construction worker, filed the present lawsuit in May 2016. Under New York Labor Law, he alleges unpaid overtime and spread-of-hours compensation, failure to provide annual wage notices and weekly wage statements, and illegal kickback of wages. He also alleges unpaid overtime under the Fair Labor Standards Act ("FLSA"). Lastly, he seeks foreclosure of a New York mechanic's lien. In September 2016, the defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). In June 2017, discovery was stayed pending determination of the defendants' motion.

**DISCUSSION**

  The defendants raise nine discrete arguments. The only meritorious one is addressed first.

**I. *New York Labor Law***

  **A. Spread-of-Hours Compensation**

  The defendants argue that unpaid spread-of-hours compensation is insufficiently alleged. Def. Br. at 11–12. "Spread-of-hours compensation is a scheme under which employees are entitled

1

to an extra hour's worth of pay at the minimum wage if the employee works in excess of ten hours in a day." *Ramos v. Telgian Corp.*, 176 F. Supp. 3d 181, 202 (E.D.N.Y. 2016) (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4). Following guidance from the New York Department of Labor, "the majority rule in the Eastern and Southern Districts appears to be that employees who earn more than the minimum wage are not entitled to spread-of-hours compensation." *Id.* at 202–03 (collecting cases). In the present case, Landi's complaint is silent as to his hourly wage. Instead, he alleges only that he received a weekly salary of $960.00, Compl. ¶ 33, which, when divided by 40 hours, yields an hourly rate of $24.00—greater than New York City's minimum wage even under the current regulations. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.1 (in 2017, $10.50 per hour for employers with ten or fewer employees and $11.00 per hour for employers with eleven or more employees). Nor does he allege how many employees the defendants have, which is necessary for determining the appropriate minimum wage. Thus, Landi's third cause of action for unpaid spread-of-hours compensation is dismissed with leave to replead within 21 days of the date of this order.

### B. Kickback of Wages

The defendants also argue that illegal kickback of wages is insufficiently alleged. Def. Br. at 12–13. New York Labor Law provides that if an employer has (1) promised an employee an "agreed rate of wages," (2) requested, demanded, or received a portion of those wages, and (3) done so on pain of "procuring or retaining employment," then the employer has engaged in an illegal kickback. N.Y. Lab. Law § 198-b(2). In the present case, Landi alleges that he received a weekly salary of $960.00, Compl. ¶ 33, from which a reasonable inference to draw is that this was an agreed-upon rate. Moreover, the defendants "would withhold approximately $110.00 per week from [his] wages citing cash flow problems," *id.* ¶ 34, and would require him "to pay cash to [their]

2

foremen in order to retain [his position] with the Defendants," *id.* ¶ 79. These allegations suffice to state a cause of action for illegal kickback of wages.

## II. Fair Labor Standards Act

### A. Horizontal Joint Employment

The defendants argue that joint employment is insufficiently alleged, which would undermine Landi's unpaid overtime claim because he would not be able to aggregate his hours worked in excess of forty per week across all four defendants. *See* Def. Br. 9. "Horizontal joint employment exists when two (or more) employers each separately employ an employee and are sufficiently associated with or related to each other with respect to the employee." *Murphy v. Heartshare Human Servs. of N.Y.*, No. 17-CV-1033, 2017 WL 2378024, at *5 (E.D.N.Y. June 1, 2017) (published) (internal quotation marks and citations omitted). "Courts apply the same horizontal joint employment test under federal and New York labor law." *Id.* at *11 (citation omitted). This test is fact-intensive and multi-factored, including common ownership and management, shared supervision of employees, and intermingling of operations. *See id.* at *5–7.

In the present case, Landi alleges that the corporate defendants—341 Hancock LLC and 103 Saint James Place LLC—are both involved in "real estate acquisition and management," Compl. ¶¶ 27–28, and "have unified and interrelated operations, centralized control of labor relations, and interrelated business goals," *id.* ¶ 17. The two individual defendants—Ethan Craig and Tatiana Cames—each "served as a principal, officer, and/or manager of [these companies]." *Id.* ¶¶ 5, 7. Indeed, the defendants concede that Cames is a principal of both companies. Def. Answer ¶ 7. Moreover, Craig and Cames "own all the beneficial interest" and "conducted substantially all the management functions" of these companies. Compl. ¶¶ 18–19. Lastly, Craig and Cames both have the power to hire and fire employees of these companies, and to control work

3

schedules and wage rates. *Id.* ¶¶ 37–42. These allegations suffice to establish that Landi was jointly employed by the defendants. *Cf. Murphy*, 2017 WL 2378024, at *8–11.

### B. Engagement in Commerce

The defendants argue that engagement in commerce is insufficiently alleged, which would undermine Landi's allegation that defendants 341 Hancock LLC and 103 Saint James Place LLC qualify as enterprises under the FLSA. Def. Br. at 10–11. This argument is without merit. Cases discussing the engagement in commerce element "have held that it is logical to conclude that even generic products like soap have moved in interstate commerce." *Shi v. DXN Mike Corp.*, No. 16-CV-5185 (ERK) (JO), 2017 WL 1533540, at *1 (E.D.N.Y. Feb. 7, 2017) (citation omitted). In the present case, Landi performed "general construction work, demolition, framing, tile work, installing and finishing wood floors, and painting." Compl. ¶ 30. Thus, an inference can be reasonably drawn that Landi used products such as "paint brushes, hammers, nails, tiles, adhesives, and wood," Pl. Opp. at 6, and that some of these products originated outside of New York.

### C. Overtime Work

The defendants argue that unpaid overtime work is insufficiently alleged. Def. Br. at 8–9. Not so. "To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). In the present case, Landi alleges the following work schedule:

- (1) July 1, 2014–July 31, 2015: six days a week, 9:00 AM to 5:00 PM;
- (2) December 1, 2015–January 1, 2016: six days a week, 9:00 AM–10:00 PM;
- (3) January 2–January 31, 2016: seven days per week, 9:00 AM–5:00 PM; and
- (4) February 1–April 8, 2016: six days a week, 9:00 AM–5:00 PM.

Compl. ¶¶ 29, 31–32.

Thus, an inference can be reasonably drawn that Landi worked more than 40 hours a week, by an additional 8 to 38 hours a week, depending on the time of the year.

### III.  *New York Lien Law*

I provide some brief background as to Landi's mechanic's lien claim. Under New York Lien Law, "[t]he court must adjust and determine the equities of all the parties, and also the order of priority of the different liens. In short, the form of the action, the enforcement of the judgment by foreclosing the rights of the parties, the awarding of a deficiency judgment against persons liable for the debt, and all the proceedings, are in all respects the same as in the foreclosure of a mortgage in courts of equity." Edward Marks, Jensen on the Mechanics' Lien Law § 333, at 342 (1963 & Supp. 1983) (citation omitted); *see also Dewees Mellor, Inc. v. Weise*, No. 91-CV-2518 (ERK), 1993 WL 591608, at *5–9 (E.D.N.Y. Dec. 29, 1993) (determining the order of priority of a mechanic's lien vis-à-vis a mortgage and a security interest). Thus, Landi seeks foreclosure of a mechanic's lien on 320 Macon Street, Brooklyn, NY—the alleged principal place of business of defendant 341 Hancock LLC. Compl. ¶¶ 2, 80–87. To that end, he requests several forms of relief, including a declaration that his lien is valid, an adjustment of equities, and a determination of lien priorities. Compl. at 16.

**A.  The Saint James Place Lien**

The defendants make two arguments addressed to the mechanic's lien claim that I discuss below. There is a threshold issue, however, relating to a mechanic's lien not included in Landi's complaint. Specifically, the defendants attach to their motion a purported notice of Landi's mechanic's lien on 103 Saint James Place, Brooklyn, NY—the alleged principal place of business of defendant 103 Saint James Place, LLC, Compl. ¶ 3. ECF No. 18, Ex. D. The defendants contend that "[a]lthough [Landi] fails to allege foreclosure of this lien in his Complaint, the Saint

5

James [Place] Lien is nearly identical to [the Macon Street lien that Landi wishes to foreclose on], and should be reviewed by this Court in [an] effort to preserve judicial resources." Def. Br. 15. In response, Landi states that he "never moved for foreclosure of the lien on 103 Saint James Place because no such lien was ever filed." Pl. Opp. at 14. I am not sure what relief the defendants seek with respect to this purported lien. If they are seeking a declaration that the Saint James Place lien is invalid, then they should assert a counterclaim to that effect, which they may do so by filing an amended answer within 21 days of the date of this order.

### B. Eligible Lienors

Returning to the merits of the mechanic's lien claim, the defendants argue that the Macon Street lien is void because N.Y. Lien Law § 3 "allows only trust funds to secure wages via [a] mechanic's lien." Def. Br. at 16. This argument is frivolous. The statute in question provides that, inter alia, contractors and laborers who have performed labor "for the improvement of real property," *and* trust funds "to which benefits and wage supplements are due or payable for the benefit of such laborers," can attach a lien to said real property for the value of such labor, benefits, or wage supplements. N.Y. Lien Law § 3.

### C. Amount of Liens

The defendants also argue that the Macon Street lien is void because it is willfully exaggerated under N.Y. Lien Law § 39. Def. Br. at 16–17. Specifically, the defendants point to the lien's inclusion of not just the value of Landi's labor, but also liquidated damages under the FLSA and New York Labor Law. ECF No. 18, Ex C. Although it is true that the amount sought by a mechanic's lien typically cannot exceed "the value or agreed price of the labor and materials remaining unpaid," N.Y. Lien Law § 4(1), "[t]he fact that a lien may contain improper charges or mistakes does not, in and of itself, establish [willful exaggeration]," *Blair v. Ferris*, 2017 WL

6

1712790, at *4 (N.Y. App. Div. May 4, 2017) (published) (internal quotation marks and citation omitted). Nor does the "inclusion of items for which a lien is improperly asserted . . . invalidate the lien." *MXP Realty Corp. v. Angrisani*, 576 N.Y.S.2d 754, 756 (N.Y. Sup. Ct. 1991). Moreover, the defendants have failed to make any showing that "the amounts set forth [in the lien] were intentionally and deliberately exaggerated." *Blair*, 2017 WL 1712790, at *4 (internal quotation marks and citations omitted). And absent a conclusive showing of such intent, the issue of willful exaggeration is "one which ordinarily must be determined . . . at trial." *NY Prof'l Drywall of OC, Inc. v. Rivergate Dev., LLC*, 29 N.Y.S.3d 591, 593 (N.Y. App. Div. 2016) (internal quotation marks and citations omitted).

### IV.   *Supplemental Jurisdiction*

Lastly, the defendants argue that Landi's claims relating to the defendants' failure to provide annual wage notices and weekly wage statements, as well as his foreclosure of mechanic's lien claim, should be dismissed for lack of supplemental jurisdiction. Def. Br. at 13–14, 18. Not so. Because adjudicating Landi's unpaid overtime claim under the FLSA will necessarily require an examination of his wage notices and statements, the claims relating to those wage documents "form part of the same case or controversy," 28 U.S.C. § 1367(a), as his FLSA claim. Landi's foreclosure of mechanic's lien claim also "form[s] parts of the same case or controversy" as his FLSA claim because the lien amount includes his unpaid overtime wages. ECF No. 18, Ex. C. Thus, the enforceability of the mechanic's lien is directly tied to the merits of Landi's FLSA claim.

## CONCLUSION

The defendants' motion for judgment on the pleadings is denied except as to Landi's third cause of action for unpaid spread-of-hours compensation, which is dismissed with leave to replead within 21 days of the date of this order. Moreover, if the defendants wish to assert a counterclaim

7

as to the Saint James Place lien's validity, they may do so by filing an amended answer within 21 days of the date of this order.

                                                     **SO ORDERED.**

Brooklyn, New York
June 27, 2017                                              *Edward R. Korman*
                                                        Edward R. Korman
                                                        United States District Judge